MAR 0 7 2008

ORDERED in the Southern District of Florida on _____



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | CASE NO. 07-17999-BKC-AJC |
| | CHAPTER 11 |
| OCEAN BLUE LEASEHOLD | Jointly Administered |
| PROPERTY, LLC, | |
| a Delaware limited liability company, et al., | |
| | |
| Debtors. | |
| _____/ | |
| OCEAN BLUE LEASEHOLD | |
| PROPERTY, LLC, | |
| a Delaware limited liability company, et al., | ADV. CASE NO. 07-01791-AJC |
| | |
| Plaintiff, | |
| vs. | |
| | |
| JERRY G. CROLEY | |
| and DONNA M. THOMAS | |
| f/k/a DONNA MARIE PERRI, | |
| | |
| Defendants. | |
| _____/ | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This adversary proceeding came before the Court for trial on February 12, 2008. Having considered the testimony of the witnesses and the argument of counsel, having reviewed the exhibits introduced as evidence at trial and the Court file, and being otherwise fully advised in

the premises, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## Summary of Facts

On October 31, 2007, Plaintiff Ocean Blue Fee Property, LLC ("OB Fee") filed its Complaint commencing this action (CP[1] #1). Defendants Jerry Croley and Donna Thomas filed their Amended Answer and Affirmative Defenses on December 13, 2007 (CP #17).[2] The parties filed a Pretrial Stipulation on February 11, 2008 (CP # 73). The material facts, for the most part, have been stipulated to or are not in dispute.

OB Fee and Defendants are tenants in common. The relief sought by OB Fee in this action is the entry of a final judgment authorizing OB Fee to sell both the estate's interest and Defendants' interests in the Property pursuant to 11 U.S.C. § 363(h). OB Fee also requests, pursuant to 11 U.S.C. § 363(j), that the Court determine the value of Defendants' interests and the amount payable to Defendants from the net proceeds of sale. The Property to be sold consists of land and a 12-story, 141,679 square foot commercial office building known as the "200 Building" located at 200 S.E. First Street, Miami, Florida.

OB Fee is one of the debtors in the above-referenced jointly administered Chapter 11 proceedings. OB Fee owns $14/15^{th}$ of the fee estate of the Property. Defendants each own a $1/30^{th}$ interest in the fee estate, and, together, they own a $1/15^{th}$ interest in the fee estate. The Property is leased to Ocean Blue Leasehold Property, LLC[3] ("OB Leasehold"), another one of

---

[1] As used herein, "CP" refers to court papers filed in this adversary proceeding, and "B-CP" refers to court papers filed in the administratively consolidated main bankruptcy cases.

[2] The Court granted partial summary judgment in favor of Plaintiff as to Defendants' two affirmative defenses, estoppel and waiver, on the ground that these state law defenses are not available under 11 U.S.C. § 363(h). See C.P. # 66.

[3] Although OB Leasehold is not a plaintiff in this action, OB Leasehold joined with its affiliate, OB Fee, in moving for the entry of an order authorizing a sale of the Property (B-CP

2

the debtors in the above-referenced Chapter 11 proceedings. OB Leasehold owns 100% of the leasehold estate. It leases the office space to the tenants at the 200 Building and collects rent from tenants. OB Fee and the Defendants lease the Property to OB Leasehold pursuant to a Ninety-Nine Year Lease, dated May 15, 1956, and a Supplement and Amendment to Lease, dated January 24, 1962 (the "Lease").

On December 6, 2006, OB Fee and OB Leasehold entered into a Contract for Purchase and Sale of Real Property (the "Sale Contract") with Related Investments, Inc., a Nebraska corporation ("Related"). The Sale Contract provided for the sale of 100% of the fee interests in the Property for a cash purchase price of $31,620,000. The Sale Contract also provided, in paragraph 22.22, that the Lease will be terminated effective as of the Closing. OB Leasehold joined in and signed the Sale Contract for the purpose of agreeing to terminate the Lease.

On January 9, 2008, this Court entered an Order authorizing OB Fee and OB Leasehold to close on the Sale Contract. B-CP # 220. In granting this relief, the Court relied on the representations of OB Fee and OB Leasehold that the sale price of $31,620,000 is the highest and best value of the Property in the current market. B-CP # 190, ¶ 3. Defendants objected to the sale but did not contend that the amount of the purchase price was less than fair market value. Based on a sale for $31,620,000, the net proceeds of sale will be more than sufficient to pay the Debtors' secured and unsecured creditors in full, leaving a potential surplus of more than $3,000,000.[4]

---

———————————————— (cont.)

#190). Further, as discussed below, OB Leasehold joined with OB Fee in the proposed Sale Contract, and agreed that the Lease will be terminated upon the sale of the Property. The Court authorized the sale to proceed, subject to the resolution of this action.

[4] Michael Griffith, the Debtors' property manager, performed a review of the scheduled and filed claims. Griffith testified that Legg Mason's secured claim is in the amount of $21,292,756.52 plus certain additional charges and fees. The remaining claims, as scheduled,

Defendants do not contend that the Sale Contract presents an inadequate price or that it will not benefit the Debtors' estates. Rather, Defendants contend that the Property can be sold for the same or substantially the same amount without eliminating their combined $1/15^{th}$ interest in the fee estate. OB Fee, on the other hand, contends that a sale of 100% of the interests will produce a substantially greater recovery for the estate than the sale of OB Fee's 93.33% interest. OB Fee also contends that Defendants will not be prejudiced by a sale of their interests because they will be compensated fully in cash for the value of their interests.

OB Fee and OB Leasehold, during their efforts to market the Property, learned that potential purchasers were unwilling to consider purchasing the Property for a price in the range of $30,000,000 to $35,000,000 unless they were able to purchase 100% of the interests in the Property. Related imposed the same requirement as a condition for its acquisition of the Property at the $31,260,000 price. Related was advised by potential lenders that they would not provide financing for an acquisition of less than 100% of the interests. However, in September 2006, the OB entities obtained $23,500,000 in financing to enable them to acquire a 93.33% (14/15ths) interest in the fee estate and a 100% interest in the leasehold estate. The OB entities borrowed $20,000,000 from Legg Mason, secured by a first mortgage, and $3,500,000 from SREI, secured by a pledge of membership interests. The Sale Contract with Related required the Debtors to convey 100% of the fee and provides for termination of the Lease.

OB Fee's appraiser valued the Property at $31,620,000, the amount of the purchase price under the then-pending Sale Contract. Using an income capitalization approach, and assuming that a sale for $31,620,000 would occur, he determined that the value of Defendants' $1/15^{th}$ interest in the present value of the future rent payments plus the present value of the reversion is
─────────────────── (cont.)

total $4,760,840.76. Relying on the filed claims, rather than the Debtors' schedules, this total is $5,207,783.26.

4

$375,000. Defendants' appraiser initially valued Defendants' interest based on the assumption that the Property will not be sold at the present time but, rather, will be returned to the fee owners at the end of the Lease, in the year 2055. This method produced a lower value. However, when Defendants' appraiser employed the method used by OB Fee's appraiser (one that considers that a sale will occur presently), Defendants' appraiser came to a value of $369,000 for the $1/15^{th}$ interest.

### Jurisdiction

This is an adversary proceeding seeking relief under 11 U.S.C. § 363(h). The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b). This is a core proceeding in which the Court may enter a final judgment pursuant to 28 U.S.C. § 157(b)(2)(N) & (O).

### I. Analysis of Factors Under 11 U.S.C. § 363(h)

Section 363(h) of the Bankruptcy Code authorizes a sale free and clear of the interests of co-owners if certain conditions are met. Section 363(h) provides that a debtor or trustee may sell both the estate's interest in property and a co-owner's interest if the following four conditions are met:

> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

5

OB Fee and Defendants stipulated that a partition in kind is impracticable because the Property is improved real estate with an office building and cannot be subdivided in kind among the owners. The parties also stipulated that the Property is not used in the production, transmission, distribution or sale of electric energy or of natural or synthetic gas for heat, light or power. This leaves subsections (2) and (3). OB Fee carries the burden of proof with respect to all of the Section 363(h) requirements. *In re Anderson*, 132 B.R. 657, 660 (Bankr. M.D. Fla. 1991); *In re McDow*, 248 B.R. 466, 469 (Bankr. M.D. Fla. 2000).

In support of its position that a sale of 100% of the fee interests will result in a substantially greater return for the estate, OB Fee offered the testimony of Related's President, Michael Cutler. Cutler testified that Related would not be willing to purchase the Property unless it acquired 100% of the fee interests.[5] He further testified that several potential lenders advised Related that they would not finance the transaction unless Related acquired 100% of the fee interests in the Property. OB Fee also offered the testimony of Daniel Mahru, one of the Debtors' co-managers, and Michael Griffith, whose company managed the Property and handled leasing. Both Mahru and Griffith testified that, in discussions with potential purchasers, the mere mention of Defendants' minority ownership position caused potential purchasers to immediately lose interest.

Defendants presented evidence that, in September 2006, the OB entities paid $23,500,000 to acquire their interests in the Property, consisting of 93.33% of the fee and 100% of the leasehold. This transaction was structured as a sale of partnership and membership interests, rather than a sale of the real estate itself. The OB entities obtained financing consisting of a first mortgage loan from Legg Mason in the principal amount of $20,000,000 and a mezzanine loan

---

[5] The Sale Contract provided, in paragraph 22.22, that the Lease would be terminated upon the closing of the sale of the Property.

6

from SREI in the amount of $3,500,000. Defendants did not participate in or consent to this sale. Nor did they join in the mortgage to Legg Mason or otherwise pledge or encumber their interests. Defendants argue that the September 2006 transaction provides evidence that the Property can be sold without eliminating their combined 1/15th interest in the fee estate.

In addition, Defendants' appraiser, Peter Goodell, testified that, in his opinion, the Property can be sold for the same or substantially the same amount without eliminating the 1/15th ownership interest. However, Goodell was unable to support his opinion on this issue with specific examples of similar sales.

Based on the evidence presented, the Court finds that OB Fee has carried its burden of showing, pursuant to 11 U.S.C. § 363(h)(2), that the "sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free and clear of the interests of such co-owners." Although the OB entities, in September 2006, were willing to acquire less than 100% of the fee, and were able to finance the transaction, the OB entities paid substantially less than the present $31,620,000 purchase price. Moreover, several witnesses testified that current conditions in the credit and real estate markets have led commercial lenders to adopt more restrictive lending practices than those that existed in 2006. OB Fee's witnesses testified that, at the $30 million plus price level, none of the prospective purchasers had any interest in acquiring less than 100% of the fee interest. Defendants did not provide any evidence indicating that the Property can be sold, at the present time, for $30,000,000 or more without conveying 100% of the interests in the Property.[6]

---

[6] The Court's conclusion on this issue is based, in part, on the sale price that Related offered to pay--$31,620,000. However, the sale to Related does not appear to be going through and, if the Debtors are unable to sell the Property to another party for the same price or a higher price, the Court may revisit its analysis. The Court's decision is without prejudice to the parties' rights to seek reconsideration in the event the sale of the Property is for a higher or lower price.

7

The only remaining issue under Section 363(h) is whether "the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners." *See* 11 U.S.C. § 363(h)(3). The cases in which bankruptcy courts have found that the detriment to a co-owner outweighs the benefit to the estate generally involve situations in which a sale will displace a co-owner or otherwise result in serious hardship. *See In re Griffin*, 123 B.R. 933, 936 (Bankr. S.D. Fla. 1991) (defining detriment "as meaning not only economic hardship, but also any loss, harm, injury, or prejudice proximately following from an involuntary displacement"); *see also In re Gauthreaux*, 206 B.R. 502, 507 (Bankr. N.D. Ill. 1997) (denying a sale where it would be likely that the co-owner would be unable to purchase a new residence); *In re McCoy*, 92 B.R. 750, 752 (Bankr. N.D. Ohio 1988) (finding that the involuntary displacement of a mentally incompetent individual outweighed the benefit to the estate).

Here, the loss to Defendants is the loss of the unknown potential future value of their minority interests in the Property. Defendants testified that they want to retain their interests because the Property may substantially appreciate in value, thereby benefiting them in the future or benefiting their heirs. (Though, it may not appreciate to their expectations resulting in a diminished, rather than enhanced future return.) Defendant Thomas testified that, in addition to this reason, she wishes to retain her interest to preserve her family heritage. The Defendants acquired their interests from their mother who, in turn, acquired her interest from her parents, the original owners of the Property.

The Court is sympathetic to Defendants' concerns. However, the Bankruptcy Code provides very limited grounds for denying a sale of both the estate's and the co-owners' interests in a property. Indeed, Section 363(h) provides only four requirements for compelling such a sale. The possibility that a co-owner's interest may substantially appreciate in value over time, while not unrealistic, is not a factor in the analysis. Nor is the admirable desire to preserve one's

8

family heritage a factor in determining whether a sale should be compelled. Defendants obviously will not become homeless as a result of the sale; nor will they suffer any other hardship that would justify the Court refusing to order the sale. Additionally, the Property is located a few feet from what was Fort Dallas, built as a military base in 1836, during the Seminole wars. The Fort was replaced by an apartment building in 1924 and it, in turn, was replaced by a Hyatt Hotel, which operates there today. Little is left at the site to remind the Defendants' of their family heritage.

If the Court were persuaded that the 1/15th interest of Defendants should not be sold at this time, then upon the conclusion of the term of the Lease, in approximately forty-seven years, the Defendants or their heirs would find themselves owning, as tenants in common, a property that would, at that time, be subject to a partition suit which would result then in the entire parcel being sold. When sold now, Defendants will receive the present value of the Property; and, the proceeds from the sale, if prudently invested, will be a substantially greater amount in the year 2055 than it is today. If the Defendants stayed in for the forty-seven year ride, then depending on inflation or recession, they would get a sum which, when discounted back to 2008, could be either more or less than the value of their interest computed as of today. Accordingly, there appears to be neither benefits nor harm to Defendants in deferring the partition sale of the Property to 2055. Thus, the Court finds that OB Fee has satisfied the requirement of 11 U.S.C. § 363(h)(3).

## II. Analysis of Value of Defendants' Interests Under 11 U.S.C. § 363(j)

The next step in the analysis is to determine the value of Defendants' combined 1/15th interest in the fee estate (*i.e.*, how much Defendants should be paid from the proceeds of sale). Section 363(j) of the Bankruptcy Code directs the court to distribute the proceeds of sale, less the

9

costs and expenses of sale, to the co-owners based on the value of their interests. Section 363(j) provides:

> After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

To determine the value of Defendants' 1/15th interest, each side presented the testimony and the report of a real estate appraiser; however, the two appraisers utilized different methods.

The Court finds that OB Fee's appraiser, Michael Cannon, utilized a methodology that is consistent with the requirements of the statute and that correctly takes into account the fact that the Property is being sold at the present time. In contrast, Defendants' appraiser valued the Property based on the assumption that the Property will not be sold, will remain subject to the Lease and will be returned to the present owners in the year 2055, at the expiration of the Lease. This approach may be a valid appraisal methodology but it ignores the fact that the purpose of the instant proceeding is to authorize a sale of the Property to a third party for present fair market value. In other words, the Property is not going to be returned to the current owners at the end of the Lease. It is being sold now for cash, and the cash must be divided among the co-owners, as provided in the statute.

OB Fee's appraiser, Cannon, using the income capitalization method, valued the two components of the leased fee estate: (1) the present worth of the future contract rent, and (2) the present worth of the reversion. Using a discount rate of 6%, he calculated the present worth of the rental income stream (1/15th) to be $51,755. Using a discount rate of 7%, he valued the present worth of the reversion (1/15th) as $323,424.00. Thus, Cannon valued the present worth

10

of Defendants' 1/15th interest (factoring in both the present worth of the future rent and the present worth of the reversion) to be $375,000.

Cannon based his valuation of the reversion on the assumption that the Property will be sold for a present fair market value of $31,620,000, yielding net sale proceeds of approximately $30,000,000. He inflated the net sale proceeds at a growth rate of 3% per annum for 48 years and then discounted the future amount to present value using a discount rate of 7% per annum.

Defendants' appraiser, Peter Goodell, initially assumed that the Property would remain subject to the Lease and would be returned to the fee owners in 2055, at a time when the building will be of zero value. Goodell's approach produced a value for the 1/15th interest of $163,000. However, when Goodell was asked to assume that the Property will be sold at the present time for $31,260,000, rather than retained for the duration of the Lease, he arrived at a value of $369,000 for Defendants' 1/15th leased fee interest.

The Court finds that Cannon's approach is the correct method for valuing Defendants' interests pursuant to 11 U.S.C. § 363(j). Section 363(j), by its plain terms, requires the Court to distribute the proceeds of sale after a sale of the property. Section 363(h) presumes that a sale will occur and that the proceeds will be distributed. *See, e.g., In re Levenhar*, 30 B.R. 976, 981 (Bankr. E.D.N.Y. 1983) ("[I]t is necessary to know what percentage of the total [sale] proceeds will have to be paid to [the co-owner] as compensation for her life estate and her undivided half interest, or right to survivorship, whichever is hers under the law of New York.").

In determining that the present value of Defendants' 1/15th interest in the Property is $375,000, the Court is mindful that the sale to Related is unlikely to ever close for the stated amount or that the Debtors may sell the Property to another purchaser for a different amount. However, the $31,620,000 amount is the value that OB Fee offered as the fair market value of the Property, and Defendants did not argue otherwise.

11

Defendants urge the Court to conclude that they are entitled to a distribution of $1/15^{th}$ of the actual cash proceeds of sale. Based on the estimated net sale proceeds of $30,000,000, this would result in a distribution of approximately $1,000,000 to each of the Defendants. In support of this position, Defendants note that the proposed sale to Related involved the termination of the Lease. (*See* Sale Contract, in paragraph 22.22). Defendants argue that the termination of the Lease will convert their reversion into a present $1/15^{th}$ fee interest.

The Court is not, however, persuaded by the Defendants' argument. The Court reads the statute to require that the interest of a co-owner be valued based on the nature of the interest as it existed prior to the sale. *See In re Levenhar*, 30 B.R. at 980-81 (value depends on the nature of the existing property rights of the co-owner). Prior to the closing, Defendants' have only a reversionary interest in the fee, due to the existence of the Lease. This is the interest the Court must value.

In conclusion, the Court values Defendants' $1/15^{th}$ interest in the Property at $375,000 ($187,500 for each Defendant), the value attributed to the $1/15^{th}$ leased fee interest by OB Fee's appraiser, based upon a sale price of $31,620,000. If the Debtors sell the Property to another purchaser for a different amount, other than the $31,620,000 amount which is suggested to be the fair market value, then the Defendants' $1/15^{th}$ interest will necessarily be adjusted accordingly, relative to their pro rata share.

### III. Defendants' Entitlement to Attorneys Fees and Costs

The only remaining issue is Defendants' request for an award of reasonable attorneys' fees and costs. The Court finds that Defendants are entitled to recover their reasonable attorney's fees and costs pursuant to Article VII of the Lease. Article VII contains the following Indemnity clause:

12

> Lessee covenants and agrees with Lessor that during the term of this lease the Lessee will indemnify and save harmless the Lessor <u>against any and all claims, debts, demands or obligations which may be made against the Lessor or against the Lessor's title in the premises, arising by reason of or in connection with the making of this lease and the ownership by the Lessee of the interest created hereby</u>; and if it becomes necessary for the Lessor to defend any action seeking to impose any such liability, the Lessee shall pay the Lessor all costs of court and attorney's fees incurred by the Lessor in effecting such defense in addition to any other sums which the Lessor may be called upon to pay by reason of the entry of a judgment against the Lessor in the litigation in which such claim is asserted. In effect, the Lessee covenants and agrees to indemnify and save harmless the Lessor against any and all claims which may be made against the Lessor or against the premises where such claims arise by reason of or in connection with the ownership by the Lessee of this lease and where such claims are asserted by any persons who claim under, by, through or against the Lessee, as distinguished from claiming solely under, by, through or against the Lessor. (Emphasis added.)

Defendants are "Lessors" under the Lease. The claim against them in this action is one that is "against the Lessor's title in the premises." It arises "by reason of or in connection with ... the ownership by the Lessee of the interest created hereby [by the Lease]." The wording of the Indemnity is sufficiently broad to encompass an action by one lessor against another when, as here, the action was necessitated by the actions of the lessee.

OB Fee seeks to eliminate Defendants' ownership interest in the Property. There can be no greater assault on Defendants' "title in the premises." Moreover, the legal expenses Defendants have had to incur are the direct result of a claim "arising by reason of or in connection with" OB Leasehold's ownership of the Lease. Notably, the Debtors filed these Chapter 11 cases and sought an immediate sale of the Property as a result of OB Leasehold's default under the Legg Mason loan. The Debtors expressly acknowledged, in their First Amended Disclosure Statement (B-CP #205, p. 4), that "Due to the Debtors' inability to meet their obligations to Legg Mason and SREI prior to the Petition Date, the Debtors each filed their bankruptcy petitions on September 26, 2007." Further, this proceeding was filed to maximize

the sale price of the Property and thereby generate sufficient cash to pay Legg Mason and the Debtors' other creditors.

This is not a case in which a lessee is suing a lessor and will have to indemnify the lessor for its attorney's fees regardless of fault. On public policy grounds, courts have refused to enforce similar indemnity provisions under such circumstances. *See Succar v. Safra Nat'l Bank of New York*, 237 Fed. Appx. 526 (11th Cir. 2007); *Penthouse North Ass'n v. Lombardi*, 461 So. 2d 1350 (Fla. 1985); *Century Village, Inc. v. Chatham Condominium Ass'ns*, 387 So. 2d 523, 524 (Fla. 4th DCA 1980). Here, the sole plaintiff, OB Fee, is neither the lessee nor the indemnitor. OB Fee stands in the position of a third party that is pursuing a claim against a lessor arising from the lessee's (OB Leasehold's) ownership of the lease.

Moreover, on equitable grounds, OB Leasehold should be required to indemnify Defendants for their reasonable fees and costs. Otherwise, any recovery obtained by Defendants will be substantially reduced by the fees and costs they have had to incur in defending this adversary proceeding. In view of the broad language of Article VII, and the fact that OB Fee is the plaintiff, the Court concludes that the Indemnity is enforceable against OB Leasehold.

## Conclusion

Based upon the foregoing, the Court concludes that Plaintiff OB Fee has satisfied its burden in demonstrating that adequate grounds exist, under 11 U.S.C. § 363(h), to compel a sale of both the estate's and Defendants' interests as tenants in common in the Property. The Court further concludes the value of Defendants' interests in the Property, pursuant to 11 U.S.C. § 363(j), based upon a sale price $31,620,000, is $375,000 (1/2 to each Defendant), which amount is subject to adjustment if the Debtors sell the Property for an amount different than that offered by Related. Defendants are entitled to recover reasonable attorneys fees and costs incurred in

14

defending this adversary proceeding. In accordance with Bankruptcy Rules 7054 and 9021, the Court will enter a separate judgment based on the above findings and conclusions.

###

Copies furnished to:
Peter H. Levitt, Esq.
Shutts & Bowen LLP
1500 Miami Center
201 South Biscayne Blvd.
Miami, Florida 33131
plevitt@shutts.com
(305) 415-9447

(Attorney Levitt is directed to serve a conformed copy of this Order on all required parties and to file a Certificate of Service.)

15